**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3518-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EDGARDO E. CUEVAS, a/k/a
WILLIAM GRACIA, JOSE
MALDONADO, JOSE RIVERA,
and WILLIAM GARCIA,

     Defendant-Appellant.

_____

Submitted October 31, 2018 – Decided December 12, 2018

Before Judges Koblitz and Currier.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No.15-09-0751.

Joseph E. Krakora, Public Defender, attorney for appellant (Al Glimis, Designated Counsel, of counsel and on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Edgardo E. Cuevas appeals from his convictions for second-degree robbery, N.J.S.A. 2C:15-1(a)(1); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7); and fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a), after pleading guilty without a plea agreement on the first day of jury selection. We reverse because defendant was denied effective assistance of counsel, causing his original attempt to plead guilty with a plea agreement to be rejected. We reverse and remand to the judge. A new attorney shall be appointed to represent defendant. If defendant chooses to plead guilty, his maximum exposure shall be eight years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, as previously offered by the State.

On April 21, 2015, at approximately 4:00 p.m., defendant entered Tony's Jewelers in Clifton, New Jersey and stole gold chains. A fight between defendant and the store owner ensued where defendant punched the owner several times and jumped onto a glass countertop, breaking it. Defendant left the store with at least two stolen necklaces, which were later found on his person with hypodermic needles.

# I. The November 10, 2015 Guilty Plea Attempt

A private attorney appointed by the Office of the Public Defender to represent defendant (pool attorney) appeared on behalf of defendant.[1] Defendant came before the judge to plead guilty to second-degree robbery. The remaining counts in the indictment were to be dismissed by the State. The State had agreed to a maximum term of eight years, subject to the NERA eighty-five percent parole disqualifier. During a sidebar discussion, however, defense counsel informed the judge that defendant refused to sign the guilty plea forms. When the judge asked defendant if he rejected the plea offer, defendant responded:[2]

> THE DEFENDANT: No, I didn't reject the offer.
> All I said to my lawyer, I talked to my lawyer, but every
> time I talk to him it's a big deal. And when I came
> Friday and I talked to him, and I say can I talk to the
> Judge because I would like to change my lawyer,
> because I feel like he not giving me a fair one, because
> every time we go to the court -- I know I commit a

---

[1] The Public Defender shall "[m]aintain one or more trial pools of lawyers who shall be available to serve as counsel on a case basis as needed"; and "[e]ngage counsel from said trial pools on a case basis as may be necessary for the proper performance of the duties of the office and compensate them for their services . . . ." N.J.S.A. 2A:158A-7(c) to (d). It must "divide the case workload of the office between the professional staff and the trial pool or pools." N.J.S.A. 2A:158A-9.

[2] Throughout this opinion, we reproduce the transcript precisely as written, without modification, except where indicated.

crime. I did something that I was not supposed to do. I admit that. I'm not saying I'm innocent.

THE COURT: Okay.

THE DEFENDANT: But I ask him, can you help me get my lawyer, because the crime I commit is not that serious to get 8 years 85. But I'm not he[re] telling people to do what they've got to do. But they got to do their job. Every time --

[DEFENSE COUNSEL]: Judge, you know what?

THE DEFENDANT: Every time that I talk to him--

[DEFENSE COUNSEL]: Mr. Cuevas --

THE DEFENDANT: -- it's like I don't get nothing.

Defense counsel stopped defendant and detailed on the record his efforts:

I visited this man multiple times in the jail. In fact, first blush he said that he was acting in self defense. I was able to retrieve copies of the video, four different angles inside the jewelry store, and each time it looks like my client is trying to be a customer, and when the -- the owner turns his back to open a case behind the counter, my client is seen lunging across the countertop reaching and grabbing a handful of what looks like some necklaces, at which point the store owner reaches over, sees him and hits his arm down, and then a fight ensues. Trays get knocked over, et cetera.

I explained to my client all the State has to do is roll that video tape and by using force in a theft, perpetrated upon this owner of the store, it qualifies for a second-degree robbery. And I've gone over this with my client multiple times and he has a prior record.

4

Now, this is the first time I'm hearing that he wants a new lawyer. If he wants a new lawyer --

The following exchange then took place between defendant and defense counsel:

THE DEFENDANT: I told you that Friday.

[DEFENSE COUNSEL]: Well, then you never went to --

THE DEFENDANT: And you came and told me, no --

[DEFENSE COUNSEL]: Sir, I'm --

THE DEFENDANT: -- you're going to go to trial.

[DEFENSE COUNSEL]: -- speaking now. I'm speaking and you hold your tongue.

THE DEFENDANT: I'm not your son --

[DEFENSE COUNSEL]: You're not my son, you're my client. And if you want a new lawyer --

THE DEFENDANT: That is clearly --

[DEFENSE COUNSEL]: If you want a new lawyer, go hire one.

Defense counsel then informed the judge that while filling out the plea forms, defendant accepted his guilt; however, defendant would not agree on the form that he was satisfied with defense counsel's work.

Defense counsel expressed on the record his frustrations in dealing with his client:

Lastly he, and I told him, when I had spoken to him numerous times about this case, he doesn't understand why he can't get a 5 with 85. And I've explained to him, I've asked numerous times to the prosecutor. And whether the Court would consider that. And I told him again today, that notwithstanding a good deal of the 8 with 85, I would still ask for the 5 or 6 or lower at sentencing. But he just doesn't, you know, quite honestly, he doesn't listen. He thinks he can dictate and tell the prosecutor what he wants and I've been trying to tell him that's not the way it works. I've been assigned to him. If he doesn't like my work, and I've got to tell you anybody that has been assigned to me, and this Court knows, from my experience and is signed in the jail, they love having me because I fight hard for my clients.

This client doesn't seem to get it. He likes to cast aspersions on everybody else, except what he did. I am limiting his exposure. If he goes to trial and loses on this case, he's guaranteed at least a 20 with an 85 percent which makes 16 years in jail, for what he considers nothing as terrible as trying to take jewelry from a store owner, a hardworking man who has a right to make a living.

So, he just doesn't fathom that he broke the laws of the State of New Jersey. Now, I'm willing to put this Plea Form through, but the way his actions are, if he wants another attorney, he doesn't need to get representation by the public defender. He has every right to hire one, but he better do it immediately, because I know he hasn't tried, he claims he has an attorney in mind, but no one will take him. And you know what will happen? They'll call me, and they'll ask me about them and I'll tell them quite honesty, he's a very difficult man to deal with because he doesn't see the forest from the trees.

> But if I'm still his lawyer and I have to try his case, I will do the best I can, but I see him getting convicted.
>
> Now, this is a good plea offer, but if he says he's not satisfied with my services then, and the Public Defender will not reassign it, if you want to serve, try this case on your own, what they call pro se, I will sit next to you throughout the whole trial, and you do your own defense. That's your option.

The judge explained to defendant that he had the right to a private attorney, the Public Defender's Office would not assign a new pool attorney, and defense attorneys have no control over the plea agreements offered by the State. Acknowledging that defendant and defense counsel "may not get along, [and] may have some difficulty understanding each other . . . because [they] both have strong personalities," the judge encouraged defendant to continue working with defense counsel.

The judge told defendant:

> So, at this point, you're stuck with whether or not you want to take the 8 or not. Now, if you are not satisfied with your lawyer, I cannot take your plea bargain, sir. I know everything that I have told you, I know [defense counsel] has told you before.
>
> So, here we are. The only other thing I can do is schedule you for trial, Mr. Cuevas, which you are entitled to. So, now you have to tell me, which one do you want, sir? Understanding that you are not going to get a new public defender.

7

Defendant replied, "I never say no to the plea. Or he asks me a question, then I said no. That's what I told him." The judge indicated that she understood but reiterated that she could not accept his guilty plea if he was not satisfied with counsel and would have no choice but to set a trial date. Defendant responded, "Yeah, I understand. But I never say nothing due to the plea." Defense counsel added, "When you told me you're not satisfied with the work I've done for you, then I can't in good conscience put this plea through." Defense counsel continued:

> Because I don't know if you understand this, but I did go to school for this, and my license is on the line. So, a person like you says you don't want, you don't like the work I did but I put a plea through, I could be subjected to misconduct charges. I am not going to do that for you. You wanted the plea, we're filling out the forms, but you think you're so cute because, oh, I'm not completely happy with your work here, because you're not getting what you want. So, therefore, you just boxed yourself into a trial because you think you're trying to be cute.
>
> You have 14 prior convictions, five felonies. Five, including one armed robbery. So, you know what the law is and you know how it happens and what goes on. So, once you've made that known, now you can change your mind and say if you're satisfied, but I don't know if the Court will accept your plea today, from what's going on, because you seem to be wanting to always manipulate the system for yourself. You had ample opportunity to get a new lawyer and you've done nothing to do so. I don't see any family here with you,

8

someone you communicate with to get a lawyer, and quite frankly, I don't believe any lawyer would -- you would be able to hire a lawyer, because if you came to me privately, you wouldn't have enough money to pay me. And that's the bottom line.

So, right now the pretrial memo was filled out last week, which you refused to sign. I handed it to the Court, I signed it and the prosecutor signed it. Now all the Judge has left to do is put this into the trial bank and give us a trial date. And that's your doing.

The judge informed defendant that she was not going to accept his guilty plea. The following exchange then occurred:

THE DEFENDANT: But I was going to take the plea, Your Honor.

THE COURT: No, no, no, Mr. Cuevas. I don't think you understand. You understand that this is not something that you are going to be forced into doing.

THE DEFENDANT: No, no. I was not forced.

The judge then spoke to defendant:

(In Spanish) I'm speaking. I am telling you I cannot force you to take a plea. I can't take your plea after you're telling me that you're dissatisfied with your lawyer. You understand? I can't do it. Because when we're done, what you're going to turn around and do is file an appeal and say that you're not happy with the sentence and that the judge overlooked the fact that you had indicated that you were unhappy with your plea.

So, in fact, I don't want to do this case twice, Mr. Cuevas. One time. So, the law obligates me to give you a trial date, okay?

The judge then informed defendant that if convicted at trial, he would face a lengthy prison term.

Defendant started speaking in Spanish and the judge and defense counsel responded as follows:

THE COURT: Okay, but you need it in English.

[DEFENSE COUNSEL]: You have to speak English.

THE DEFENDANT: When he asked me that --

THE COURT: You need to speak to me in English, or you need an interpreter.

Defendant then stated, in English, "When he asked me if I was unsatisfied, when I was in a table I say that. But I would never say that when I took the plea . . . ." The judge, however, agreed with defense counsel that "his [law] license [was] on the line" and reiterated her hesitancy to accept a guilty plea when defendant indicated that he was not satisfied with defense counsel. The judge tried to clarify defendant's reason for being dissatisfied:

THE COURT: Mr. Cuevas, listen, I need to understand, when you said that you're dissatisfied, are you dissatisfied because you didn't get the plea bargain you wanted? Is that why you're --

10

THE DEFENDANT: Nah.

THE COURT: Are you dissatisfied with his representation of you?

THE DEFENDANT: No, not really. It was a lot of things is did I ask and something I don't understand, but I never mean it to tell him something like that, to go to court and say in court, when he asked me that.

THE COURT: But he has an obligation to do that, Mr. Cuevas. Do you understand?

[DEFENSE COUNSEL]: Yes.

THE DEFENDANT: I understand that.

Defense counsel added:

So, quite frankly, Mr. Cuevas, I think you opened your mouth and really hurt yourself by saying that you're not satisfied with my work. My suggestions to you would be to get another lawyer, hire one, if that's the case. Because the public defender is going to keep me with you. Or you can try this case on your own and I will sit next to you as the law allows. But then you're on your own, asking your own questions and answers. So, it's your call. The judge is ready to give us a trial -- a trial date.

The judge asked defendant what he wanted to do, and defendant responded: "Take the plea." The judge then asked to see counsel at sidebar, stated she was unsure whether it would be appropriate to accept defendant's guilty plea, and asked counsel if the matter should be adjourned to allow defendant time to "think

about it."  The State stated, "We're going back to . . . nine [years] after today, Judge.  He's been jerking us around . . . for lack of a better term, for a number of days."  Back on the record, the following exchange took place:

> THE COURT:  Mr. Cuevas, you know what?  I just want to clarify something with you. I'm very concerned about taking this plea today.  If you have some sort of equivocation as to why, which was the discussion that we had earlier, why you were unhappy with the services given to you by [defense counsel].  I need some clarification from you, because if it has anything to do, other than the fact that you didn't like the number that you got, then I don't want to take this plea from you.  Do you understand?  Because I don't want it to be forced.  I don't want there to be any indication that you were unhappy with his services, because all that is going to mean is that there is going to be a motion after you take a plea to withdraw, or a PCR[3] after you're convicted or an appeal.  And we're going to be right back here again.
>
> So, I would prefer that you clarify for me what you meant by that.  Do you understand my question?
>
> THE DEFENDANT:  I understand your question.
>
> THE COURT:  Okay.
>
> [DEFENSE COUNSEL]:  So, you are unhappy with the number that's being offered; is that what it is, Mr. Cuevas?

---

[3] Petition for post-conviction relief.

12 <span>A-3518-16T1</span>

THE DEFENDANT: One minute you had speak, I never could understand a lot of the things. That was the problem.

Defense counsel then proceeded to clarify the confusion surrounding defendant's dissatisfaction by establishing on the record—and defendant agreeing—that (1) defendant received all of the discovery and discussed it with defense counsel "multiple times"; (2) defense counsel negotiated with the State and was able to reduce the plea offer from nine to eight years; (3) at defendant's request, defense counsel asked the State for five years, but the State said "absolutely not"; (4) defense counsel explained to defendant that if found guilty after trial, defendant would face an extended term of twenty years in prison with an eighty-five percent parole disqualifier; (5) "based upon all of the work [he had] done" for defendant, defense counsel recommended that defendant plead guilty; (6) at sentencing, defense counsel would ask the judge for a sentence of less than eight years, but the ultimate sentence is within the judge's discretion; and (7) given defendant's criminal history, defense counsel found it unlikely that the judge would sentence defendant to less than eight years. Defense counsel explicitly asked defendant about his satisfaction:

[DEFENSE COUNSEL]: So, therefore, you're unhappy, not with the proofs in understanding what's going on here, because you know what happened, you're unhappy because you didn't get what you felt

13

was a good plea offer, other than what you're pleading guilty to today; is that correct?

THE DEFENDANT: Yeah.

[DEFENSE COUNSEL]: And you understand that today was the last day to take the eight, otherwise it's off the table and you have to go to trial, which I suggested to you was not a viable option; do you understand that?

THE DEFENDANT: Yeah.

[DEFENSE COUNSEL]: So, the only dissatisfaction you have with my services is that you could not – I could not get you lower than an eight-year term of imprisonment; is that correct?

THE DEFENDANT: Yeah.

[DEFENSE COUNSEL]: You've gone over all the proofs with me, you understood same, and yet, have no questions about what the State will prove to show that you're guilty of the charge; do you understand that?

THE DEFENDANT: Yeah.

[DEFENSE COUNSEL]: You would prefer having a lower number, so would I, but it's not in the cards right now. So, therefore, you know that you're voluntarily accepting this plea to plea to eight years with 85 percent; is that correct?

THE DEFENDANT: Yeah.

[DEFENSE COUNSEL]: Has anybody forced you or threatened you to want to enter into this plea?

14

THE DEFENDANT:  No.

[DEFENSE COUNSEL]:  You're doing so of your own free will?

THE DEFENDANT:  Yeah.

[DEFENSE COUNSEL]:  And you're doing so, you know that your exposure is so great that you want to limit your exposure in jail; is that correct?

THE DEFENDANT:  Yeah.

[DEFENSE COUNSEL]:  So, therefore, are you now satisfied with the explanations I've given you towards this plea?

THE DEFENDANT:  Yeah.

[DEFENSE COUNSEL]:  Are you satisfied this is the right thing for you to do concerning your livelihood; is that correct?

THE DEFENDANT:  Yeah.

[DEFENSE COUNSEL]:  And are you satisfied now with the services I've rendered to you?

THE DEFENDANT:  Yeah.

Defense counsel believed this clarified the confusion, however, the judge disagreed.  She explained:

I don't feel comfortable taking his plea.  I just asked him a few minutes ago . . . if it had anything to do with the number, and he said, no, we just didn't understand

15

A-3518-16T1

each other.  I still think that this is, you know, ripe for appeal, and I'm concerned about taking his plea.

The State, while reiterating that an eight-year plea offer was "coming off the table today," suggested that the pretrial conference be adjourned to a later date since defendant "[would not] sign the pretrial forms . . . ."

The judge held another sidebar discussion out of defendant's presence and again expressed that she was uncomfortable accepting defendant's guilty plea. While discussing whether adjourning the matter would be worthwhile, the judge asked the State to leave eight years "on the table."  The State responded:  "Judge, I'm not leaving the eight on the table.  The eight is coming off the table today."

Contrary to his client's expressed wishes, defense counsel advised the judge at sidebar:  "Just give us a trial date. . . .  Just reject this, give us a trial date, that's all."  The judge replied, "All right."

Back in open court, the judge explained to defendant:

> Mr. Cuevas, I understand what you just -- the questioning that you just went through with your attorney, and your desire to take the plea.  My problem is, is that you are equivocating about why you're not happy with your lawyer, and for that, it's completely understandable, it's your choice.  You're telling -- you're telling the Court how you feel, but based on that, I'm not satisfied that I can take this plea at this time based on that.

16

So, I'm concerned about the fact that you are equivocating. And I don't want to force you into doing anything. I don't think it's appropriate, and based on that I'm just going to go ahead and give you a trial date, Mr. Cuevas, all right?

Defendant did not appear to understand why the judge was giving him a trial date, saying: "So that mean that I can't take my plea?"

Defense counsel repeatedly told defendant on the record that he now had to go to trial, adding:

[DEFENSE COUNSEL]: So, now you have to go to trial. And if you're going to hire another attorney, the attorney is bound by the trial.

THE DEFENDANT: I wanted to take the plea.

[DEFENSE COUNSEL]: But the Judge is not accepting it. The Judge has a right not to accept a plea, and it's basically because of what you said.

THE DEFENDANT: I didn't know that. I ask you that because I understand a few things. It was not because the plea.

[DEFENSE COUNSEL]: No, you -- we tried to clear it up for you and the Judge is not satisfied.

The judge asked defendant if he was still refusing to sign his pretrial memorandum because she wanted him to sign and understand the contents of the document. Defendant remained confused:

THE COURT: Mr. Cuevas, are you still refusing to sign the document? Or are you going to sign it?

THE DEFENDANT: (Speaking in Spanish) plea.

THE COURT: You can't take the plea. Let me just clarify for the record, and although I have translators in the room, he's indicating --

THE DEFENDANT: (Speaking Spanish).

THE COURT: One second, sir. One second.

[DEFENSE COUNSEL]: Speak English.

THE COURT: He said to me in Spanish "why can I not take my plea?" And then he said, "I didn't understand that. I didn't know that." So, now I'm going to respond to you, Mr. Cuevas.

I explained to you that once you indicate that you are not satisfied with your lawyer, it's a very important part of the plea. That's why it's a question inside your Plea Form.

THE DEFENDANT: Yeah, but I didn't mean it like that, Your Honor. I didn't mean it like that.

THE COURT: But I just gave you a second op --

THE DEFENDANT: It was because I couldn't understand a few things.

THE COURT: Mr. Cuevas, I gave you a second opportunity to clarify that. I asked you, is it that you are unhappy with him based on the number that you got, and you said no. It's that we talked about things and we

18

don't understand each other about a lot of things; is that not what you said?

THE DEFENDANT: (Speaking in Spanish). And I couldn't understand too much.

THE COURT: Do you want to do me a favor and translate for him, please? Because you keep switching back and forth. You said -- repeat yourself again for me, Mr. Cuevas.

THE DEFENDANT: (Speaking in Spanish).

Defendant stated, "When I'm asked the question in English, I understand but I don't understand very well." An interpreter was finally sworn in to translate for defendant. The judge then questioned defendant about his need for an interpreter:

THE COURT: All right, Mr. Cuevas, you have never asked for a Spanish interpreter, right?

THE DEFENDANT: No.

THE COURT: Okay. But today you're telling me that you didn't understand what you were talking about with your lawyer?

THE DEFENDANT: Because there are things I understand well, but there are some things I do not understand.

Defendant tried to clarify that he wanted to plead guilty and was satisfied with defense counsel's work: "So, you can't take my -- you can't take the plea that I

19

wanted to take because I don't want to go to trial. When I said that I wasn't satisfied, I didn't understand a couple of things. It wasn't because of the job that he was doing."

The judge then decided to adjourn the matter "for a couple of weeks" to allow defendant and defense counsel to review the pretrial memorandum with an interpreter present to ensure defendant "underst[ood] everything clearly." Defendant again stated, "When I said I wasn't satisfied, I wasn't referring to the job that he was doing, rather just some words that he was using that I didn't understand." The judge reiterated to defendant that the eight-year plea offer was "off the table," and again, defendant indicated he often had difficulty understanding defense counsel. Defendant repeated, "I'll do it. I'll repeat it. The plea is being taken away because of misunderstanding that I had?" Defense counsel also tried to clarify any confusion:

> Judge, in all my times dealing with Mr. Cuevas, the first thing I asked was do you need an interpreter. He said no. I visited him multiple times in the jail with availability to have an interpreter through a phone bank, he never asked me nor required me to do so. I don't speak Spanish, and he clearly understood my questions and answers based upon my conversations and notes. So, maybe there was some misunderstanding as to the question, I don't know. But I've been trying very hard to negotiate the numbers down, and as the Court is aware so is the prosecutor.

20

So, I think it more was aligned with the numbers, as opposed to the proofs and my explanation of same to my client.

So, I think under that, I think the Court can take this plea, because it's purely the numbers that he was quite annoyed at, not the -- not the legal review of the file.

The State argued that "[c]learly, there is no knowing and voluntarily intelligent plea that can come from this defendant today, because he does not understand things that are going on." The State then recommended that a pretrial conference be adjourned and an interpreter be ordered for that hearing. The judge adjourned the matter until December 7, 2015.

## II. <u>The December 7, 2015 Pretrial Conference</u>

At the pretrial conference, with the assistance of an interpreter, the judge reviewed defendant's sentence exposure. Defendant tried to understand why the plea offer was withdrawn:

> THE DEFENDANT: So, what happened last time is when I was here, I was about to take the plea and then he asked me something and then when I answered, then the plea offer was taken away, I want to know why.
>
> THE COURT: Right. Because remember when we talked about it back then that it's -- the Court can't take a plea when you're indicating that you're dissatisfied with your representation by your attorney. You understand? Remember we talked about that?

THE DEFENDANT: Yeah, I understand. Well, then if you're taking the plea away, why are you taking me to trial? I never asked to be taken to trial.

THE COURT: Because that's the only other recourse that the Court has. I can't just leave you sitting in inside the jail, right? I can't accept your plea when you indicate that you're dissatisfied with your lawyer, because what will happen is, Mr. Cuevas, as soon as you hit the jail after you take your plea, you have the right to appeal. The Court is going to have to take back that plea, because you indicated on the record that you were dissatisfied with your lawyer. It's an automatic appealable issue, you understand? So, there is no point in me taking a plea from you when you're saying that your rights are being violated. Because you're not satisfied with your lawyer. You understand what I'm saying?

THE DEFENDANT: (In Spanish).

THE COURT: Okay. So, my choice as the Court is to do two things: If I can't take your plea because it's not appropriate and it's not legal, the only other thing I can do is schedule the case for trial.

I know you think that the Court is somehow punishing you, but I'm not. I don't have a choice.

THE DEFENDANT: But how can you say that if I was about to take the plea that was given to me?

THE COURT: You can't take a plea when you're saying you're dissatisfied with your lawyer.

THE DEFENDANT: I explained to you that the reason that was -- there were some words -- I do understand

22

English but there were some words that I did not, and that is why I said what I said.

THE COURT: I absolutely remember that, Mr. Cuevas. And we were speaking English the whole time and then you told me you didn't understand some words and with that you went into -- and we went through it with the interpreter, and you know what? You told me the same exact thing, that you were still dissatisfied. You told me in English and you told me the same thing in Spanish. Do you remember that?

THE DEFENDANT: Yeah.

THE COURT: Okay, so, legally --

THE DEFENDANT: I understand what you're saying.

THE COURT: Momento. Momento. [using Spanish] One second. Legally I cannot accept your plea, sir. I know you are looking at me confused and you think that the Court is somehow punishing you. I am not. I am trying to protect your rights. Because you have advised me that you are unhappy with your lawyer.

THE DEFENDANT: I understand, but what I don't understand is why am I being sent to trial? Because at trial they might give me a lot more time than was on the plea.

### III. The September 13, 2016 Plea

On September 13, 2016 the parties started selecting a jury. Defendant, with the assistance of an interpreter, after signing the guilty plea forms, pled guilty to all charges in the indictment, without any agreement from the State.

He was represented by the same pool attorney who had represented him previously.

## IV. Sentencing

At sentencing, defense counsel opposed the State's motion for an extended prison term. Defense counsel also emphasized the dramatic difference between the maximum term the State initially offered defendant and the extended term the State was seeking. The State responded that previous negotiations were not relevant to whether the judge should grant the discretionary extended-term motion.

The judge went through the statutory factors, N.J.S.A. 2C:44-3, for an extended-term sentence and, finding that defendant's prior robbery, aggravated assault and burglary convictions qualified him, sentenced defendant as a persistent offender.

Defense counsel then spoke about sentencing:

> This was a non-negotiated plea. The Court has just gone over my client's prior history and, quite frankly, this Court knows me too well. I cannot even attempt to ask for a mitigating factor. None whatsoever. I -- in all honesty, I wouldn't even burden the Court to try to make a stretch. I can't. And I know the aggravating factors are overwhelming.

Defense counsel then asked the court to sentence defendant to ten years in prison. The court sentenced defendant to an aggregate sentence of fifteen years in prison, subject to NERA.

Defendant raises the following issues on appeal:

> POINT I: THE COURT BELOW ERRED IN FINDING THAT IT WAS PRECLUDED AS A MATTER OF LAW FROM ENTERING MR. CUEVAS' GUILTY PLEA BECAUSE HE TOLD HIS ATTORNEY, WHEN FILLING OUT THE GUILTY PLEA FORM, THAT HE WAS NOT SATISFIED WITH COUNSEL'S REPRESENTATION. THE COURT ABUSED ITS DISCRETION IN REFUSING TO ALLOW MR. CUEVAS TO ENTER A GUILTY PLEA.
>
> POINT II: THE COURT BELOW ABUSED ITS DISCRETION BY FAILING TO APPOINT A SPANISH-SPEAKING INTERPRETER TO TRANSLATE FOR MR. CUEVAS. THE COURT FAILED TO APPOINT AN INTERPRETER DESPITE THE FACT THAT MR. CUEVAS WAS ADDRESSING THE COURT IN SPANISH AND THE COURT WAS SPEAKING SPANISH TO MR. CUEVAS. BECAUSE THE COURT REFUSED TO ALLOW MR. CUEVAS TO ENTER A GUILTY PLEA BASED ON HIS STATEMENTS WITHOUT AN INTERPRETER, MR. CUEVAS WAS DENIED HIS CONSTITUTIONAL RIGHTS UNDER THE FEDERAL AND NEW JERSEY CONSTITUTIONS.
>
> POINT III: TRIAL COUNSEL'S CONDUCT AFTER MR. CUEVAS SAID HE WAS DISSATISFIED WITH HIS REPRESENTATION CONSTITUTED PER SE INEFFECTIVE ASSISTANCE OF COUNSEL.

25

TRIAL COUNSEL'S FAILURE TO WITHDRAW AS MR. CUEVAS' ATTORNEY AND THE COURT'S FAILURE TO APPOINT AN UNCONFLICTED ATTORNEY TO REPRESENT DEFENDANT DEPRIVED HIM OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO COUNSEL, DUE PROCESS AND A FAIR TRIAL.

POINT IV: ALTERNATIVELY, THE SENTENCING COURT IMPROPERLY CONSIDERED DEFENDANT'S PRIOR RECORD BOTH IN IMPOSING AN EXTENDED TERM SENTENCE AND IN DETERMINING THE LENGTH OF THE SENTENCE; THE COURT'S SENTENCE IS EXCESSIVE.

V. Ineffective Assistance of Counsel

We review a defendant's claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984) and State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland test in New Jersey). Under the Sixth Amendment of the United States Constitution and Article 1, Paragraph 10 of the New Jersey Constitution, the right to counsel entitles a defendant to the effective assistance of counsel during criminal proceedings. Strickland, 466 U.S. at 685-86; Fritz, 105 N.J. at 58. To establish a violation of the right to effective assistance of counsel, a convicted defendant must satisfy the two-pronged test articulated in Strickland by showing that (1) counsel's performance was

26

deficient; and (2) counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 687-88; see also Fritz, 105 N.J. at 52-53, 58.

Under the first prong of the Strickland test, in order to show that counsel's performance was deficient, a defendant must show that counsel's representation was not objectively reasonable. State v. Pierre, 223 N.J. 560, 578 (2015) (citing Strickland, 466 U.S. at 687-88). A defendant "must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Once a defendant has done so, an appellate court will then view the facts asserted in the light most favorable to the defendant. See State v. Porter, 216 N.J. 343, 353 (2013).

A defendant must also satisfy the second prong of the Strickland test. See State v. Parker, 212 N.J. 269, 80 (2012). A defendant must "affirmatively prove prejudice" by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Pierre, 223 N.J. at 583 (quoting Strickland, 466 U.S. at 693-4). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S at 694. Even if defense counsel's error is "professionally unreasonable" a criminal judgment will not be set aside if the error had no effect

on the outcome of the case.  State v. Paige, 256 N.J. Super. 362, 377 (App. Div. 1992) (quoting Strickland, 466 U.S. at 691-92).

Typically, claims of ineffective assistance of counsel are not brought on direct appeal "because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460-61 (1992).  Though claims of ineffective assistance of counsel "are more appropriately raised in collateral, post-conviction relief proceedings," we may hear such a claim on direct appeal when there is "an adequately developed record upon which to evaluate [a] defendant's ineffective assistance of counsel claim."  State v. Johnson, 365 N.J. Super. 27, 34 (App. Div. 2003).

Here, defendant argues that such an adequately developed record exists because defense counsel had a conflict of interest.  We agree.  Defense counsel's conflict of interest, and his subsequent ineffectiveness, arose at the November 10, 2015 plea hearing when defendant stated he was dissatisfied with counsel's representation.  Defense counsel placed his conflict of interest on the record when he expressed concern that he could face "ethics charges."  Defense counsel told the judge that defendant was manipulating the system and recommended to

the judge, out of the hearing of his client,[4] that defendant should not be allowed to plead guilty to the favorable plea agreement.

Counsel's representation at the sentencing hearing is another example of the objectively inferior job he performed on behalf of his client. Counsel represented to the court that no mitigating factors existed and "the aggravating factors are overwhelming." The duty of defense counsel is to be a "zealous advocate" on behalf of his or her client. Brundage v. Estate of Carambio, 195 N.J. 575, 602 (2008). To behave as an auxiliary prosecutor is far below acceptable standards. Thus, because defense counsel had a conflict of interest and argued against his own client's expressed interests, the record clearly supports Strickland's first prong in determining ineffective assistance of counsel.

---

[4] We see no need for bench conferences on the record out of the hearing of the defendant when no jury is present. See State v. W.A., 184 N.J. 45, 48 (2005) (holding that a defendant's constitutional right to be present at every stage of his or her trial includes the right, when requested, to be present at voir dire sidebar conferences); see also State v. Davenport, 177 N.J. 288, 309 (2003) (holding that a defendant's exclusion from a sidebar conference does not violate his or her right to self-representation "so long as the exclusion does not deprive the defendant of meaningful participation in the content of the sidebars through his [or her] standby counsel representative"). If the judge here had determined that "legitimate security concerns" precluded defendant's presence at the three bench conferences that took place during the November 10, 2015 hearing, such concerns should have been "detailed clearly on the record." Davenport, 177 N.J. at 309-310.

Defendant was offered a plea agreement with a maximum of eight years in prison. Instead, he received fifteen years in prison after pleading guilty on the first day of jury selection; a sentence that appears dangerously close to a penalty for going to trial. See N.J.S.A. 2C:44-1(c)(1) (stating that a guilty plea or failure to plead guilty "shall not be considered in withholding or imposing a sentence of imprisonment"). But for counsel's performance, the judge may well have accepted a plea of guilty with a maximum exposure of eight years. This satisfies the "different result" likelihood of the second Strickland prong.

## VI. Insufficient Use of Interpreter

Complicating the picture was the failure to provide an interpreter to defendant at the initial hearing. Before a judge begins to speak to a defendant in Spanish, the proceedings should be stopped until an interpreter is appointed. "It is a self-evident proposition that a defendant who is unable to speak and understand English has a right to have his trial proceedings translated so as to permit him to participate effectively in his own defense." State v. Kounelis, 258 N.J. Super. 420, 427 (App. Div. 1992). A defendant does not waive "the constitutional right to a defense interpreter . . . by mere acquiescence or nonverbal conduct . . . ." Id. at 427-28; see also Daoud v. Mohammad, 402 N.J. Super. 57, 59-60 (App. Div. 2008) (finding that defendant tenant "was deprived

of a full and fair opportunity to be heard as a result of not having had a court-approved interpreter from the outset").

Finally, the judge did not allow defendant to plead guilty with an eight-year exposure without an interpreter, but accepted a guilty plea with the same defense counsel, and an interpreter, to a plea with no sentencing restriction, apparently because defendant finally signed the plea forms. Defendant received an additional seven years in prison because he had poor representation, or because he did not originally have an interpreter, or perhaps because the prosecutor and defense counsel thought defendant was "trying to be cute": none of these reasons is valid.

## VII. Rejection of Plea

The judge should not have rejected defendant's original plea of guilty. This court reviews a trial court's refusal to accept a plea agreement for an abuse of discretion. State v. Daniels, 276 N.J. Super. 483, 488 (App. Div. 1994). A trial court abuses its discretion when, for example, it rejects a plea agreement because it believes a defendant could be found guilty of a greater offense. See State v. Madan, 366 N.J. Super 98, 110 (App. Div. 2004). A trial court must exercise "sound discretion" when deciding to reject a plea agreement. Id. at 108 (quoting State v. Brockington, 140 N.J. Super. 422, 427 (App. Div. 1976)).

Where defense counsel turns on his client in order to defend counsel's own reputation, and the defendant has some language difficulty, the trial court should ensure that a new lawyer is appointed, an interpreter is utilized, and the defendant then has the opportunity to accept the plea agreement as formulated. Although the State has wide discretion in offering a plea agreement, see, e.g., State v. Cengiz, 241 N.J. Super. 482, 496 (App. Div. 1990), annoyance with a defendant who has some difficulty with English and a falling-out with his lawyer is not a valid reason to withdraw an offer.

Although the judge was clearly trying to safeguard the integrity of the proceedings, her unwarranted rejection of the guilty plea gave the State the opportunity to withdraw the proffered plea and subjected defendant to many additional years in prison. We recognize that the judge was urged by defense counsel, out of the hearing of his client, to reject the original plea, but counsel's lack of undivided loyalty to his client was clear and the judge should not have acceded to this urging.

The only way to ensure defendant does not suffer from his initial lack of an interpreter as well as ineffective counsel, is to reverse the conviction and remand the matter so that new defense counsel may be assigned. If defendant

then decides to plead guilty, he must be sentenced within the bounds of the eight-year post-indictment plea offer.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3518-16T1